UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

United States of America,            Criminal No. 17-107(20) (DWF/TNL)

          Plaintiff,

v.            **ORDER AND MEMORANDUM**

Waralee Wanless,
a/k/a Wan,
a/k/a Warlee Duarte,
a/k/a Warlee Alcaraz,

          Defendant.

This matter is before the Court pursuant to Defendant Waralee Wanless's Motion for Reconsideration of Detention Order. (Doc. No. 326.) On August 29, 2017, the United States of America (the "Government") filed a Response in Opposition to Motion to Reconsider Detention Order. (Doc. No. 346.)

On September 28, 2017, a detention hearing was held before the Court. At the hearing, the Court took the matter under advisement.

## ORDER

1. Defendant Waralee Wanless's Motion for Reconsideration of Detention Order (Doc. No. [326]) is respectfully **DENIED**.

Dated: September 29, 2017          s/Donovan W. Frank
                                             DONOVAN W. FRANK
                                             United States District Judge

**MEMORANDUM**

Defendant Waralee Wanless was indicted as a member of an international sex-trafficking and money-laundering organization. The Second Superseding Indictment ("Indictment") before the Court charges Defendant with Conspiracy to Commit Sex Trafficking, in violation of 18 U.S.C. § 1594 (Count 1); Conspiracy to Commit Transportation to Engage in Prostitution, in violation of 18 U.S.C. § 371 (Count 3); Conspiracy to Engage in Money Laundering, 18 U.S.C. § 1956 (Count 4); and Conspiracy to Use a Communication Facility to Promote Prostitution, 18 U.S.C. § 371 (Count 5). (Doc. No. 314.)

Defendant moved to the United States in 2008 from Thailand and settled in the Dallas area. Defendant is a legal permanent resident. Defendant still has many ties to Thailand: Her father, siblings, and adult child live there. Since coming to the United States, Defendant has allegedly held a number of different jobs, including importing coffee from Thailand, a dry cleaner, and most recently as an Uber and Lyft driver. Defendant admits that she has traveled to Thailand as recently as October 2016, and that she and her now-husband abruptly canceled their wedding there in March 2017, opting to marry in the United States in February 2017.

Defendant is alleged to be one of the traffickers and of the one house bosses for the sex-trafficking organization. The Indictment contains allegations that Thailand-based traffickers would transport victims from Thailand to the United States. Traffickers would

then hold a significant bondage debt over the victims. Traffickers in the United States, like Defendant, would then buy the bondage debt.

Defendant is also an accused house boss. House bosses are alleged to have run the day-to-day operations, including advertising victims for commercial sex acts, procuring and maintaining the houses of prostitution, scheduling sex buyers, and ensuring that a portion of the cash was routed back to pay down the victims' bondage debts. (Indictment ¶ 5(b).) In exchange, house bosses retained a significant portion of the cash that the victims receive, typically forty percent. (*Id.*) House bosses would also coordinate with traffickers and other house bosses to facilitate the victims' travel to other cities in the United States. Once victims were lured to the United States, they were forced to work long hours—often all day, every day—having sex with strangers to attempt to pay down their bondage debt. Victims typically did not have the ability to choose with whom they had sex, what sex transactions they would engage in, or when they would have sex. In as early as 2013, law enforcement observed activities and received reports of activity at Defendant's apartment consistent with running an active house of prostitution.

On May 25, 2017, the Honorable Paul D. Stickney in the District Court for the Northern District of Texas, Dallas Division, ordered Defendant detained pending trial. Defendant now moves this Court to reconsider the Magistrate Judge's decision. The district court conducts a *de novo* review of release and detention orders.

Pursuant to Rule 46(b) of the Federal Rules of Criminal Procedure and 18 U.S.C. § 3142, the Court considered the following factors in assessing the continued detention of Defendant:

(1) the nature and circumstances of the offense charged, including whether the offense involves . . . a minor victim;

(2) the weight of the evidence against the person;

(3) the history and characteristics of the person, including—

　(A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

　(B) whether, at the time of the current offense or arrest, the person was on probation . . . .

(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

Pretrial detention may be ordered either upon a clear and convincing showing that release would result in a danger to the community or upon a showing by a preponderance of the evidence that the release will result in a serious risk of flight. *United States v. Abad*, 350 F.3d 793, 797 (8th Cir. 2003); *United States v. Sazenski*, 806 F.2d 846, 848 (8th Cir. 1986). Additionally, if a court "finds that there is probable cause to believe that the person committed an offense under chapter 77 of [Title 18] for which a maximum term of imprisonment of 20 years or more is prescribed," then the court employs a rebuttable presumption that "no condition or combination of conditions will reasonably

4

assure the appearance of the person as required and the safety of the community."
18 U.S.C § 3142(e)(3)(D).

Here, Defendant has been charged with Conspiracy to Commit Sex Trafficking by Force, Fraud, and Coercion, in violation of 18 U.S.C. § 1594 (Count 1), a Chapter 77 offense punishable by up to life in prison. Defendant was both a trafficker and a house boss, and the Government has proffered a witness's statement of Defendant's role. Given these particular allegations, there is probable cause to believe that Defendant committed Count 1 of the Indictment. As a result, Defendant must overcome the rebuttable presumption of detention.

"In a presumption case such as this, a defendant bears a limited burden of production—not a burden of persuasion—to rebut that presumption by coming forward with evidence he does not pose a danger to the community or a risk of flight." *UAbad*, 350 F.3d at 797 (quoting *United States v. Mercedes*, 254 F.3d 433, 436 (2d Cir. 2001)). Once a defendant has met his burden, a presumption favoring detention "remains a factor to be considered among those weighed by the district court." *Id.*

Based upon all of the facts and circumstances of this case, the Court concludes that Defendant has failed to overcome the presumption of detention. The Court notes that Defendant is facing up to life in prison, has few ties to the United States or Minnesota, and has many ties to Thailand. Moreover, the criminal organization is ongoing, and a person in Defendant's position, with the help from the organization, could find a way to flee to Thailand. These factors weigh heavily toward detention.

5

Defendant's arguments to the contrary are unpersuasive. Defendant focuses on possible conditions that would prevent her escape. Specifically, Defendant proposes that she post a bond, surrender her passport, forgo using any communication devices, and be confined to her home. These proposed conditions, however, do not overcome the presumption of detention. The Government has repeatedly pointed out that it cannot stop Defendant, as a Thai national, from obtaining a new passport from the Thai government. Additionally, the Government contends that Defendant has access to substantial illicit funds. Moreover, the criminal organization is ongoing and Defendant is facing life in prison, Defendant therefore could (with or without help) find a way to flee to Thailand, where she has close family. Further, some of Defendant's proposed conditions essentially cannot be monitored. For example, how would the Government confirm that Defendant—who would live with her husband—did not use or possess a cellphone or access the Internet? Accordingly, given the seriousness of the allegations, the ongoing nature of the organization, Defendant's purported access to illicit funds, and Defendant's lack of ties to the United States and many ties to Thailand, the Court concludes that Defendant has not overcome the presumption that no condition or combination of conditions will reasonably assure her appearance. As a result, the Court denies the Defendant's motion to reconsider the order of detention.

D.W.F.