## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

United States of America,                    Criminal No. 17-107(20) (DWF/TNL)

        Plaintiff,

v.                                           **MEMORANDUM**
                                             **OPINION AND ORDER**
Waralee Wanless,

        Defendant.

---

Laura M. Provinzino and Melinda A. Williams, Assistant United States Attorneys, United States Attorney's Office, counsel for Plaintiff.

Lauren Campoli, Esq., counsel for Defendant.

---

## INTRODUCTION

This matter is before the Court on Defendant Waralee Wanless's ("Wanless") Motion to Vacate Conviction and for a New Trial pursuant to Fed. R. Crim. P. 33(a). (Doc. No. 1723 ("Motion to Vacate").) The United States of America (the "Government") opposes the Motion to Vacate.[1] (Doc. No. 1835 ("Govt. Opp.").) For the reasons set forth below, the Court denies Wanless's Motion to Vacate.

---

[1]     The Court also received and considered Wanless's reply to the Government's opposition (Doc. No. 1850 ("Reply")), the Government's sur-reply (Doc. No. 1871 ("Govt. Sur-reply")), Wanless's sur-rely (Doc. No. 1883 ("Def. Sur-reply")), the Government's second sur-reply (Doc. No. 1898 ("Govt. Sec. Sur-reply")), and Wanless's second sur-reply (Doc. Nos. 1899 ("Def. Sec. Sur-reply"); 1900 ("Def. Sec. Sur-reply Exs.").) The Court notes that while Wanless expressed concern over the quality of the photos in her exhibits supporting her second sur-reply, the Court finds them sufficient.

## BACKGROUND

The Third Superseding Indictment in the above entitled matter charged Wanless with Conspiracy to Commit Sex-Trafficking (Count 1), Conspiracy to Commit Transportation to Engage in Prostitution (Count 3), Conspiracy to Engage in Money Laundering (Count 4), and Conspiracy to Use a Communication Facility to Promote Prostitution (Count 5).  (*See* Doc. No. 830.)

Wanless was arrested in Texas and has been in custody since May 24, 2017. (Doc. No. 77 ("2017 Arrest").)  At the time of her 2017 Arrest, law enforcement searched Wanless's residence and various electronic devices, and ultimately seized a variety of items including documents from a prior arrest in 2013.  (Got. Opp. at 4.)  The prior arrest ("2013 Arrest") stemmed from allegations related to sex-trafficking in Addison, Texas. ("Addison Case").  (Doc. No. 1835-2.)  Evidence seized pursuant to the 2013 Arrest included a debt ledger, a red bank folder with bank documents, and another person's visa and travel documents ("2013 Evidence").[2]  (Doc. No. 1726.)  The Addison Case was

---

[2]    The Government states that Wanless stored this evidence in a box in her house. (Govt. Opp. at 27.)  In her Reply, Wanless contends that because the first time this assertion appears is in the Govt. Opp, it is grounds for a *Brady* violation in part because the Government failed to disclose this information prior to trial, did not provide the source of its information or any inventory release or photographs verifying the contents of what was seized pursuant to the 2013 Arrest, and did not provide the "sordid history" of the Addison Case or the reasons for its dismissal during trial.  (Reply at 3, 5-6, 40-41 (citing *Brady v. Maryland*, 373 U.S. 83 (1963)).)  She also asserts that regardless of where the evidence ended up, it was inadmissible because the chain of custody on it was "irrevocably broken when it left the hands of the Addison, [sic] Police in 2013."  (*Id.* at 7-8.)

The Government points to the record to show that it did indeed provide photographs of the items seized pursuant to the 2013 Arrest to Wanless's trial counsel.

(Govt. Sur-reply at 3-4 (citing Govt. Sur-reply Exs. 9, 10).)  The Government also points to the record to show that:  (1) it disclosed nearly 400 pages of materials related to the Addison Case to Wanless's trial counsel on August 7, 2017 (Govt. Sec. Sur-Reply at 1 (citing Govt. Sec. Sur-reply Ex. 1)) , and (2) it disclosed the details of the Addison Case, including the reasons for its dismissal, to Wanless and her trial counsel during her first substantive appearance in the District of Minnesota on September 28, 2017 (Govt. Sur-reply at 4-5 (citing Doc. No. 852 ("MN Detention Hr'g") at 33)).  Finally, the Government points to the record to show that it provided chain of custody to Wanless's trial counsel, he was able to review the evidence, and he stipulated to its origin.  (*Id.* at 3-4 (citing Govt. Sur-reply Exs. 7, 8).)

In her Sur-reply, Wanless concedes that the evidence was provided to her trial counsel; however, she contends that it was provided too late.  (Def. Sur-reply at 5-8.)  Moreover, she contends that the Government created a "makeshift inventory" of miscellaneous documents, and that the photographs of the miscellaneous documents do not match the documents "currently in the secret boxes from the discredited 2013 Addison search."  (*Id.* at 9.)  Wanless further asserts that "the original box is gone" and that "instead of one box of evidence, there are now two."  (*Id.* at 9.)  She alleges that the Government has not been forthcoming with the true origin of documents allegedly recovered from the initial box.  (*Id.* at 9 ("[T]he prosecutors affirmatively told this Court that this highly inflammatory evidence was returned to [Wanless], when it was not."); *see also* Def. Sec. Sur-reply at 1-2 )(asserting that the Government manipulated the contents of the box and that the current contents do not match initial representations of what the box contained).)  In her Second Sur-Reply, Wanless alleges that the Government manipulated not only evidence, but the testimony of witnesses as well.  (Def. Sec. Sur-reply at 2-3 and supporting exhibits (claiming that the Government perpetrated a false narrative by failing to call some witnesses and omitting statements from others); *see also*, Def. Sec. Sur-reply Exs.)

Having considered the parties' arguments, independently reviewed the record, and being acutely familiar with the trial proceedings, the Court finds no merit in Wanless's allegation that the Government violated its *Brady* obligations.  Specifically, the Court finds that the Government properly disclosed its evidence with sufficient time for trial counsel to prepare its defense, and that it properly disclosed the facts and details of the Addison Case.  Moreover, the Court declines to discredit evidence because it is currently stored in two boxes instead of one and finds insufficient support to validate any other argument Wanless makes to discredit the evidence.  Moreover, the Court finds insufficient support to the allegations that the Government manipulated witnesses or abused the judicial process in any other way.

dismissed in 2016.[3]  (MN Detention Hr'g at 33.)  The Government asserts that evidence

from the 2013 Arrest was returned to Wanless after the Addison Case was dismissed, and

that it was recovered again pursuant to her 2017 Arrest.  (Govt. Opp. at 27-28.)  Wanless

contests the chain of custody with respect to any evidence that was allegedly returned to

her; however, the record reflects that the Government provided chain of custody

documents to Wanless's trial attorney, he was able to view and inspect the evidence, and

that the parties reached a stipulation with respect to the chain of custody for digital

devices and all but one piece of physical evidence unrelated to Wanless, as well as the

authenticity of bank records, tax records, and emails.  (Govt. Sur-reply Exs. 7, 8; *see also*

Doc. No. 995.)

Wanless was one of five defendants who proceeded to trial.  During trial, the

Government's evidence against Wanless included:  (1) testimony from Pantila

Rodphokha, a/k/a Noon ("Noon") that Wanless was a high level member of the sex-

trafficking organization (Doc. No. 1035 at 2248, 2264, 2261, 2266, 2270, 2275, 2277-78,

2280-83, 2291); (2) testimony from Noppawan Lerslurchacahi that Wanless confessed to

her while the two were incarcerated at Sherburne County Jail (Doc. No. 1031 at 1150-

52); and (3) financial records, leases, e-mails, and cell phone contact information,

including items initially seized pursuant to the 2013 Arrest.  (*See,* e.g., Doc. No. 1036 at

2448-50.)

---

[3]     The Addison Case was discussed at length during Wanless's detention hearing.
(*See* MN Detention Hr'g.)  The record reflects that Wanless's trial attorney and the
Government also discussed the Addison Case prior to the detention hearing.  (*See* Doc.
No. 1835-3.)

On December 12, 2018, the jury returned its verdict, finding Wanless guilty of all counts. (Doc. No. 1001.) A Presentence Report ("PSR") was filed on June 17, 2019. (Doc. No. 1182 ("PSR").) According to the PSR, Wanless admitted that she was a high-level member of the sex-trafficking organization from 2012 to February 2013.[4] (*Id.* ¶¶ 79-80.) She also asserted that since 2013, "she had only ever worked as a solo provider" and that "[a]t times she was not involved in commercial sex work at all." (*Id.* ¶ 82.)

Wanless is currently awaiting sentencing and faces a Guidelines range of 324-405 months. (*Id.* ¶ 172.) Sentencing was scheduled to occur on December 18, 2019; however, Wanless retained new counsel on November 22, 2019, and filed a motion to continue sentencing three days later.[5] (Doc. Nos. 1490, 1520, 1527.) Sentencing was rescheduled for January 16, 2020; however, Wanless filed a second motion to continue sentencing on January 8, 2020. (Doc. Nos. 1606, 1659.)

On February 5, 2020, Wanless filed the Motion to Vacate currently before the Court.[6] Wanless moves the Court to vacate her conviction on all counts and for a new

---

[4]    Specifically, Wanless stated that she was a house boss from 2012 to February 2013, that she held bondage debt, and that most, but not all, of the victims knew what their house fees would be. (PSR ¶¶ 79-80.)

[5]    Sentencing was postponed to a date to be determined. (Doc. No. 1661.)

[6]    Because Wanless filed her Motion to Vacate more than a year past the deadline, she also filed a Motion for Leave to File Late. (Doc. No. 1722 ("Late File Motion").) The Government requested to respond first to the Late File Motion and only to the Motion to Vacate if a substantive opposition was necessary. (Doc. No. 1746.) The Court granted the Government's request. (Doc. No. 1748 ("Sched. Order").) The parties timely submitted briefing on Wanless's Late File Motion. (*See* Doc. Nos. 1724, 1792, 1797.) On April 27, 2020, the Court granted Wanless's Late File Motion. (Doc. No. 1823.) Pursuant to the scheduling order, the Government filed its substantive opposition on

trial on the grounds that (1) her first trial was marred by ineffective assistance of counsel; (2) there is newly discovered evidence; and (3) a prosecutor's comment about Wanless's right to remain silent and affirmative misrepresentation about material evidence was improper and violated Due Process.  (Motion to Vacate at 1.)

## DISCUSSION

### I.    Legal Standard

Federal Rules of Criminal Procedure 33(a) provides that a Court may grant a new trial "if the interests of justice so requires."  Fed. R. Crim. P. 33(a).  This is a discretionary decision that rests with the Court.  *United States v. Dodd*, 391 F.3d 930, 934 (8th Cir. 2004).  "A district court may grant a new trial under Rule 33 only if the evidence weighs so heavily against the verdict that a miscarriage of justice may have occurred."  *United States v. McClellon*, 578 F.3d 846, 857 (8th Cir. 2009) (citation omitted).  "When faced with a motion for new trial, . . . a district court is permitted to weigh the evidence and judge witness credibility for itself in determining if there may have been a miscarriage of justice such that a new trial is required."  *United States v. Samuels*, 543 F.3d 1013, 1019 (8th Cir. 2008).  Although the Court has broad discretion in deciding a motion for new trial, it "must exercise the Rule 33 authority sparingly and with caution."  *McClellon*, 578 F.3d at 857 (quotation marks and citation omitted).

---

May 11, 2020.  (*See* Govt. Opp.; Sched Order.)  Wanless filed her Reply on May 26, 2020.  (Reply.)  The Government filed its sur-reply on June 9, 2020.  (Govt. Sur-reply.)  Wanless filed her sur-reply on June 19, 2020.  (Def. Sur-reply.)  The Government filed its second sur-reply on June 30, 2020.  (Govt. Sec. Sur-reply.)  The Court accepted the Government's second sur-reply, despite its untimeliness.  Wanless timely filed her second sur-reply on July 1, 2020.  (Wanless Sec. Sur-reply.)

A.      **Ineffective Assistance of Counsel**

Generally speaking, to prevail on a claim of ineffective assistance of counsel, a defendant must show that:  (1) his counsel's performance fell below an objective standard of reasonableness; and, (2) there is a reasonable probability that, but for his counsel's errors, the result of the proceeding would have been different.  *United States v. Strickland,* 466 U.S. 668, 687, 694 (1984).  A "reasonable probability" requires "a substantial, not just conceivable, likelihood of a different result."  *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011).  "Judicial scrutiny of counsel's performance must be highly deferential," and there is a "strong presumption" of competence.  *Strickland*, 466 U.S. at 689.  Ineffective assistance of counsel claims are not a vehicle to second-guess trial counsel's strategic decisions.  *Schumacher v. Hopkins*, 83 F.3d 1034, 1037 (8th Cir. 1996).  Courts "must defer to counsel's strategic decisions and must not succumb to the temptation to be Monday morning quarterbacks."[7]  *Schumacher v. Hopkins*, 83 F.3d 1034, 1037 (8th Cir. 1996).

Wanless's ineffective counsel allegations include that her trial attorney:  (1) entered into a Joint Defense Agreement ("JDA"); (2) failed to assert a defense of withdrawal from the conspiracy; and (3) committed a variety of other cumulative errors.

---

[7]      Typically, post-conviction ineffective assistance of counsel claims should be brought pursuant to 28 U.S.C. § 2255 ("§ 2255 Motion") where the record can be developed to examine counsel's performance.  *United States v. Stevens*, 149 F.3d 747, 748 (8th Cir. 1998).  However, where an adequate record already exists, a district court may consider an ineffective assistance of counsel claim on a motion for a new trial.  (*Id.*)  Here, the Court already found that "the record is sufficiently developed such that it may properly consider Wanless's ineffective assistance allegations."  (Late File Motion at 9.)

(Def. Memo. at 15-48.)  Wanless contends that the prejudice caused by her ineffective assistance caused the jury to decide the case on "false facts" and that but for her trial counsel's "errors and failure to adduce exculpatory evidence at trial, there is reasonable doubt about [Wanless's] guilt in this case, and that reasonable doubt shakes the confidence of the verdict."  (Reply at 33-37; *see also* Def. Sur-reply at 3-4.)

## 1. JDA

Wanless first contends that her trial counsel was ineffective when he entered into a JDA without her informed consent, and that the JDA created an irreparable conflict of interest that Wanless did not waive.  (*Id.* at 15-20; Reply at 17-21.)  Wanless asserts that the JDA was "informal, undefined, and oral among the parties and tethered [her] to the defense of no force, threats or coercion."  (Def. Memo. at 16.)  Moreover, Wanless argues that she "did not consent to any agreement, did not see any agreement, and did not sign any agreement," and that "she did not agree to waive her defense for the group's defense."[8]  (*Id.*)

---

[8]     Wanless asserts that "on or around January 23, 2018, trial counsel purportedly created a JDA form document with the intention of signing off on a joint defense agreement with the other lawyers in the case," and that while "[o]ne of the form documents was signed by [Wanless's trial Counsel] dated January 23, 2018, "[t]he second form document was blank with [Wanless's] name typed into it and is unsigned by any party or their lawyers."  (Def. Memo. at 17.)  Wanless also asserts that "there is no evidence in the file that any of the other attorneys in the case signed the agreement or that [the] agreement governed the parties."  (*Id.*)  Finally, Wanless claims that she "never viewed, signed, or discussed any joint defense agreement" with her trial counsel, and that she "was not advised of, nor did she waive, her rights."  (*Id.* (citing Doc. No. 1725, Ex. 1 ("Wanless Aff.").)

While Wanless does not attach an executed copy[9] of the purported JDA to her Motion to Vacate, she asserts that its existence "cannot be disputed" because "as evidenced at trial" each of the defendants "put forth the same argument that [] the elements of conspiracy to commit sex-trafficking could not be proven because there was no force, fraud, or coercion present in the unlawful business run by the defendants."[10] (*Id.* at 17.)  Wanless contends that "[i]n the absence of any attorney notes or consult notes with Wanless, it is likely that the [JDA] was established informally during a closed-door meeting and ended with the proverbial gentleman's agreement," and that "[b]ecause the JDA was not in writing, or signed by the parties or clients, its terms, limitations, and implications were subject to the individual interpretation of each of the lawyers in the case."  (*Id.*)

Wanless claims that because of the JDA lacked defined parameters, "the agreement meant something different to each lawyer, and what it meant to [Wanless's trial counsel] is what [gave] rise to conflict."  (*Id.*)  Specifically, Wanless argues that her trial counsel used the JDA to wrongly and unreasonably extend a duty of loyalty to all defendants, and that it created an actual conflict that adversely affected his ability to defend her properly.  (*Id.* at 18-20; *see also* Reply at 19.)  She asserts that "[t]rial

---

[9]     Wanless attached an unsigned, incomplete copy of the purported JDA to her Reply.  (*See* Doc. No. 1850-1.)

[10]     As discussed below, Wanless argues that while "the no force, fraud, or coercion defense was the only defense for the other entrenched defendants at trial who were arrested in the midst of running these unlawful businesses," she had alternative defenses available.  (*Id.* at 25-28; *see also* Reply at 19-20.)

counsel's statements of divided loyalty and accepting the burden of proof for everyone else at the table, put Ms. Wanless, wrongly so, on par with Mr. Morris and others when the culpability levels at the trial table differed significantly."  (Def. Memo. at 19.)

The Government contends that Wanless cannot meet her burden of establishing the existence of a JDA when she fails to attach an executed document, an affidavit of prior trial counsel or anyone else claiming to have knowledge of such a document, nor provide any evidence about the JDA's terms, who was covered, or what was covered. (Govt. Opp. at 16-18.)  The Government argues further that Wanless makes baseless assumptions with respect to how her trial counsel interpreted any alleged JDA and refutes any notion that Wanless was any less culpable for her role in the conspiracy than other defendants.  (*Id.* at 18-19.)

The Court cannot conclude from the record that a JDA existed.  Even if a JDA did exist, "the fact that counsel may have participated in a uniform defense strategy and acted jointly with codefendant's counsel does not mean there was 'constructive' joint representation or a conflict of interest."  *United States v. Kindle,* 925 F.2d 272, 275-76 (8th Cir. 1991).  Here, even if some sort of informal JDA existed, the Court finds insufficient evidence that an actual conflict of interest existed.  While Wanless voices multiple assumptions with respect to how her trial counsel interpreted and applied any purported JDA, the Court finds insufficient record evidence to support her allegations and declines to speculate.  Moreover, "a common or unified defense is sometimes the best trial strategy" and the Court "give[s] great deference to counsel's determinations within

that realm." *Id.* at 276.  As discussed below, the Court also finds no actual conflict based on Wanless's allegation that her trial counsel did not pursue a withdrawal defense.

### 2.   Withdrawal Defense

Wanless also alleges that her trial counsel was ineffective because he failed to assert the defense that she withdrew from the conspiracy.[11]  (Def. Memo. at 20-25; Reply at 21-26.)  Wanless argues that she "had affirmative proof, proof by a preponderance of the evidence, that she withdrew from the conspiracy upon her arrest in Addison, Texas on February 13, 2013."  (Def. Memo. at 20.)  Wanless contends that after that date, she "closed her apartments, she left those apartments, and fully and effectively communicated to her cohort, Noon, who had already admitted their falling out, that she was moving on" and that she subsequently worked as a "solo provider."[12]  (*Id.* at 20-21 (citing Doc. Nos. 1725, Exs. B, C, E, F, H; 1726, Ex. 7d.)

Wanless asserts that "the Government's physical evidence after 2013 suggesting that [she] was still a member of the conspiracy was refutable by a full review of the

---

[11]    Wanless argues that pursuant to the *Cuyler* rule she need not show prejudice; she need only show that there was a plausible alternative defense strategy that was objectively reasonable and that due to the conflict, trial counsel did not pursue it.  (Reply at 21 (citing *Cuyler v. Sullivan*, 446 U.S. 335 at 337, 348).)  As discussed below, the Court finds the *Cuyler* Rule inapplicable because the withdrawal defense was objectively unreasonable under the facts of this case.

[12]    Wanless argues that Noon's testimony was "highly incentivized" and speculates that any conspiracy Wanless was a part of could have been one separate from the "oft cited 'large scale sex[-]trafficking conspiracy' that the Government prosecuted."  (Reply at 23-24.)  Accordingly, she argues that her alleged withdrawal could provide a complete defense.  (*Id.* at 23-25.)  The Court declines to engage with this unsupported theory.

police reports from Addison, Texas."[13]  (*Id.* at 22 (citing Doc. No. 1726, Exs. 3-4).)

Moreover, Wanless argues that she had witnesses that could have testified that she

withdrew from the conspiracy in 2013.  (*Id.* 23 (citing Doc. No. 1725, Exs. K, L).)

Wanless asserts that the withdrawal defense "was so viable, that, if proven[,] [ ]

Wanless would have been exonerated on at least some of the charges because it could be

shown she withdrew from the conspiracy before the alleged overt acts in Counts 3 and 5

occurred."[14]  (*Id.* at 24.)  Wanless contends that "rather than tell her story and defend her

against the Government's proof from 2013-2017, [her trial counsel] took an unreasonable

all-or-nothing approach to her defense."  (*Id.* at 24.)  She asserts that this approach was

"contrary to her proffer, contrary to her wishes, and contrary to the evidence in the case."

(Reply at 22.)

The Government first contends that the decision not to pursue a withdrawal

defense was a strategic decision and should therefore be immune from "Monday morning

quarterbacking."  (Govt. Opp. at 19.)  The Government also contends that the withdrawal

defense was not objectively reasonable because it was legally foreclosed to Wanless and

---

[13]     Wanless contends that during trial, the Government wrongly elicited testimony
that documents showing her participation in the conspiracy in 2017 were actually from
2013.  (Def. Memo. at 22 (citing Doc. No. 1726, Ex. 7b).)

[14]     Wanless asserts that "even simply arguing a straight not-guilty defense, that the
Government could not prove beyond a reasonable doubt that Ms. Wanless was guilty of
the sex-trafficking conspiracy, was plausible and objectively reasonable" because the
physical evidence came from the Addison Case and was therefore stale and inadmissible,
there was nothing to show communication with others post 2013, hotel receipts disproved
the Government's theory that Wanless was running girls from hotels, and witness
testimony was highly-incentivized.  (Reply at 25.)

because it was tantamount to admitting guilt.  (*Id.* at 19-21.)  The Government asserts that "there is no evidence that Wanless withdrew from the sex trafficking conspiracy and plenty of evidence that when arrested in 2017 she was still a member."  (*Id.* at 21.)

Moreover, the Government asserts that "withdrawal presupposes that the defendant committed the offense," and that "because conspiracy is a continuing offense, a defendant who has joined a conspiracy continues to violate the law through every moment of the conspiracy's existence, and she becomes responsible for the acts of her co-conspirators in pursuit of their common plot."  (*Id.* at 21-22. (citing *United States v. Zimmer*, 299 F.3d, 710, 718 (8th Cir. 2002).)  Accordingly, the Government argues that if Wanless's trial counsel had argued to the jury that she withdrew from the conspiracy in 2013, he would have conceded her guilt.  (*Id.* at 21.)

The Court finds that the decision not to pursue a withdrawal was a strategy call and declines to speculate after the fact what would have transpired had her trial counsel selected an alternative strategy.  *Hopkins*, 83 F.3d at 1037.  Moreover, as discussed below, the Court finds insufficient evidence to support the theory that Wanless actually withdrew from the conspiracy in 2013.[15]  "Strategic choices made after thorough

---

[15]   Accordingly, the Court finds the *Cuyler* Rule inapplicable because the withdrawal defense was objectively unreasonable.  To the extent Wanless argues that her trial counsel could have argued a "straight not-guilty defense," based on her assertions that the evidence seized pursuant to the 2013 Arrest was inadmissible, newly-discovered evidence shows she was a solo provider post 2013, and the credibility of key witnesses was questionable, the Court briefly notes that it finds this theory of defense objectively unreasonable as well.  (*See* Reply at 25.)

As discussed above, the Court finds no basis to exclude the evidence seized pursuant to the 2013 Arrest.  Moreover, the Court finds no basis to question the

investigation of law and facts relevant to plausible options are virtually unchallengeable."

*Strickland*, 466 U.S. at 690.  Accordingly, the Court declines to find that Wanless

received ineffective assistance when her trial counsel did not assert a defense that she

withdrew from the conspiracy in 2013, or that his failure to do so demonstrated actual

conflict caused by any purported JDA.

### 3.     Other Cumulative Errors

Finally, Wanless alleges that the adversarial process was undermined through a

variety of affirmative errors, errors of omissions, and unprofessional conduct by her trial

counsel during trial that caused the jury to decide the case on false facts.  (*Id.* at 29-48;

Reply at 26-33.)  Her allegations include that her trial counsel:  (1) directly violated a

Court order on inadmissible evidence; (2) opened the door to damaging evidence that

resulted in a jury instruction about influencing a witness; (3) nodded off at trial; (4) failed

to utilize available exculpatory evidence; (4) failed to cross examine Wanless's alleged

confession; (5) failed to impeach a key witness on critical dates and evidence; (6) failed

to object to a prosecutor's comment on Wanless's right to remain silent; and (7) tainted

the trial by using offensive language and insulting the prosecutors.  (*Id.* at 29-45; Reply at

26-33.)

The Government contends that many of the alleged errors were strategy decisions

that fail to support a claim of ineffective assistance.  (Govt. Opp. at 22-26.)  With respect

---

credibility of the witnesses.  "[W]hen faced with a motion for new trial, . . . a district
court is permitted to weigh the evidence and judge witness credibility for itself in
determining if there may have been a miscarriage of justice such that a new trial is
required."  *Samuels*, 543 F.3d at1019.

to the alleged errors that were not strategy decisions or repackaged substantive claims, the Government argues that Wanless fails to show that but for her trial counsel's actions, there was a reasonable probability that the result of the trial would have been different. (*Id.* at 25.)

Having presided over the entirety of the 6-week trial, and witnessed all of the alleged errors and omissions, the Court finds that Wanless's allegations do not support a claim for ineffective assistance. "Judicial scrutiny of counsel's performance must be highly deferential," and there is a "strong presumption" of competence. *Strickland*, 466 U.S. at 689. Here, the Court declines to second guess strategy decisions including the cross-examination of government cooperators and witnesses, and any decision related to trial counsel's theory of defense. Even if her trial counsel's cross-examination was not flawless, the Court finds that it did not fall below an objective standard of reasonableness.

Moreover, the Court finds that trial counsel's reference to inadmissible evidence did not create a basis for prejudice when the Court's ruling over the evidence occurred outside the presence of the jury, the jury never saw the evidence, and the Court provided a corrective instruction. Also, having observed trial counsel's behavior throughout the duration of the proceedings, the Court finds insufficient support for Wanless's allegation that her trial counsel nodded off during trial.[16] Finally, the Court finds that while trial

---

[16]     Wanless cites the record to show that her trial counsel joked about sleeping during trial, and that while the Court corrected similar jokes made by other attorneys, the Court did not correct her trial counsel's joke, thereby supporting her theory that her trial counsel was actually asleep. (Def. Memo. at 34 (citing Doc. No. 1041 at 3727).) She concedes that "the Court is in the best position to determine" whether her trial counsel was asleep. (*Id.*)

counsel's choice of language may have been questionable at times, there is no indication

that but for his actions, there was a reasonable probability that the outcome of the trial

would have been different.

In short, the Court finds that while Wanless may not have received a flawless

defense, and over her objections that an alternative strategy may have produced a

different outcome, the Court finds that her trial counsel was not constitutionally

ineffective.  Specifically, the Court finds that his performance neither fell below an

objective standard of reasonableness, nor is there a reasonable probability that but for his

errors, the result of the proceedings would have been different.  *Strickland,* 466 U.S. at

687, 694.  Indeed, a "reasonable probability" requires "a substantial, not just conceivable,

likelihood of a different result."  *Pinholster*, 563 U.S. at 189.

### B.    Newly Discovered Evidence

To obtain a new trial based on newly discovered evidence under Rule 33(b)(1), the

Court must find that:  (1) the evidence was first discovered after trial; (2) the failure to

find the evidence before trial was not due to lack of diligence; (3) the evidence is

material; (4) it is more than cumulative or impeaching; and (5) the evidence is likely to

produce an acquittal if the court grants a new trial.  *United States v. Delgrosso*, 852 F.3d

821, 826 (8th Cir. 2017)

Wanless contends that she is entitled to a new trial because newly discovered

evidence clearly shows that she withdrew from the conspiracy in 2013.  (Def. Memo. at 6

(citing Doc. No. 1725).)  Wanless's evidence includes "detailed calendars of

appointments, hotel receipts, emails, photos, online escort ads, and witness testimony"

that show she was "nothing but a solo provider who sought other meaningful work." (*Id.*)

The Government argues Wanless's argument fails because none of the evidence she cites is actually new, and even if it was, it would not result in acquittal.  (Govt. Opp. at 10.)  Specifically, the Government asserts that because Wanless owned and had access to the evidence she contends exonerates her, "it is in no way newly discovered."  (*Id.* at 11 (citing *United States v. Baker*, 479 F.3d 574, 577 (8th Cir. 2007).)  The Government argues further that even if the evidence was new, Wanless's argument fails because she cannot show that it would likely produce an acquittal.  (*Id*. at 12.)  The Government asserts that because Wanless was charged and convicted of participating in a conspiracy that began in 2009 and continued through May 2016, even if she had withdrawn in 2013, she would still be guilty of participating in the conspiracy.  (*Id.* at 12-13 (citing *Smith v. United States*, 568 U.S. 106, 107 (2013); *United States v. Jackson*, 345 F.3d 638, 648 (8th Cir. 2003)).)

The Court finds that Wanless's argument based on newly discovered evidence fails under Rule 33(b)(1) because none of the evidence she cites is actually new.  The Government properly observes that much of the evidence Wanless cites consists of her own calendars, receipts, emails, and photographs.  (*See* Doc. No. 1725.)  There is no indication that these documents were unavailable to Wanless before or during trial.  This also applies to the online reviews of her escort services because they were publicly available on the internet throughout the proceedings, and any potential testimony from her husband because he too was available before and during trial.  *Baker*, 479 F.3d at 578

(finding that a new trial was not warranted when there was no proof that "new" evidence unavailable at time of trial nor any indication that due diligence could not have uncovered the evidence at that time).

Moreover, the Court finds that even if the evidence was "newly-discovered," a new trial is not warranted because it is unlikely that the evidence would produce an acquittal. *Delgrosso*, 852 F.3d at 826. "A cessation of activities, alone, is not sufficient to establish withdrawal from [a] conspiracy." *Jackson*, 345 F.3d at 648. "It is not easy to withdraw from a criminal conspiracy." *United States v. Zimmer*, 299 F.3d 710, 718 (8th Cir. 2002). Even accepting the evidence as new, the Court finds that it fails to show that Wanless "took affirmative action to withdraw from the conspiracy by making a clean breast to the authorities or by communicating [her] withdrawal in a manner reasonably calculated to reach [her] coconspirators." *Jackson*, 345 F.3d at 648.

In short, the Court declines to grant a new trial based on evidence that is neither newly discovered, nor likely to produce acquittal even if it was newly discovered.

### C.    Prosecutorial Misconduct

To obtain relief based on prosecutorial misconduct, Wanless must show that "(1) the prosecutor's remarks or conduct were improper and, (2) the remarks or conduct affected the defendant's substantial rights so as to deprive [her] of a fair trial." *United States v. Hunter,* 770 F.3d 740, 743 (8th Cir. 2014) (internal quotation marks and citation omitted). A defendant must show not just that misconduct occurred, but that it "fatally infected" the trial. *Rhodes v. Foster,* 682 F.2d 711, 714 (8th Cir. 1982). To this end, the Court examines whether the challenged conduct "deprived the defendant of a fair trial by

examining the cumulative effect of the misconduct, the strength of the properly admitted evidence of the defendant's guilt, and any curative actions taken by the trial judge." *Hunter*, 770 F.3d at 743 (internal quotation marks and citation omitted).

Wanless alleges that the Government committed prosecutorial misconduct when it deliberately misrepresented that evidence was found in 2017 when it was actually found in 2013.  (Def. Memo. at 59-51; Reply at 10-12, 37-44; Def. Sur-reply at 5-9.)  Wanless also contends that the Government "improperly commented on [Wanless's] right to remain silent."[17]  (Def. Memo. at 44; *see also* Reply at 41-42.)

The Government argues that Wanless's claim that it misrepresented the date evidence was seized is wrong because even though the evidence related to a 2013 case, it was actually recovered during a 2017 search.  (Govt. Opp. at 30-31.)  Moreover, the Government contends that both Wanless and her trial counsel "were fully aware that some of the evidence seized at the time of her arrest in 2017 consisted of items previously recovered during the search of her home in 2013."  (Govt. Opp. at 28.)  The Government also asserts that whether the evidence was seized in 2013 or 2017 is of no consequence because it included dated materials that were sent to the jury showing "indisputably" that in 2012, Wanless was participating in a conspiracy that ran from 2009-2017.  (*Id.* at 32-33.)  Accordingly, the Government contends that Wanless cannot show that any alleged misrepresentation "fatally infected" the trial.  (*Id.* at 33.)

---

[17]    While Wanless asserts this allegation in her argument related to ineffective assistance, the Court also addresses it in the context of prosecutorial misconduct.

The Government also argues that Wanless's allegation related to an improper

comment about her right to remain silent fails because a full reading of the trial transcript

clearly shows that the comment was taken out of context.  (*Id.* at 34-35.)  Moreover, the

Government asserts that the Court addressed the comment outside of the presence of the

jury and found it harmless.[18]  (*Id.* citing Doc. No. 1043 ("Trial Trans. Vol. XVIII at

4071).)  Finally, the Government asserts that even if the comment had been improper, a

new trial is not warranted because Wanless was not prejudiced by it.  (*Id.* at 35-36.)  The

Government argues that there was no prejudice because "no one in the room—the jury

included—thought that the prosecutor was commenting on Wanless['s] failure to testify,"

and that even if there were, "any prejudice that could have attached was fully cured by

the instructions of the Court."[19]  (*Id.* at 36 (citing Trial Trans. Vol. XVIII at 4089).)

Having presided over the entirety of the trial and witnessed the alleged

misconduct, and having thoroughly reviewed the record, the Court finds that any alleged

prosecutorial misconduct did not so affect Wanless' substantial rights that she was

deprived of a fair trial.  As discussed above, the Court finds that the Government properly

---

[18]    The Court explained its understanding about the statement that "I think [the prosecutor] was critiquing or evaluating Defense Counsel's argument, as opposed to either side saying, where's the witness?  Or you should have done this."  (Trial Trans. Vol. XVIII at 4071.)

[19]    The Court instructed the jury that "[t]he Defendant in a criminal case has an absolute right under our Constitution not to testify.  The fact that the Defendants did not testify must not be discussed or considered in any way when deliberating and then arriving at your verdict.  No inference of any kind may be drawn from the fact that the Defendants decided to exercise their privileges under the Constitution and did not testify."  (Trial Trans. Vol. XVIII at 4089.)

disclosed its evidence with sufficient time for trial counsel to prepare its defense, and that it properly disclosed the facts and details of the Addison Case.  Moreover, the Court finds insufficient support to validate Wanless's allegations that the Government's use of the 2013 Evidence was improper, untruthful, or misleading such that it deprived Wanless of a fair trial.  Finally, the Court finds that Wanless's allegation related to an improper comment about her right to remain silent fails because a full reading of the trial transcript clearly shows that the comment was taken out of context and that any prejudice that could have attached was properly cured by the Court's instructions.

The Court recognizes that Wanless has faced unique and challenging obstacles throughout her life, including extreme poverty, abuse, and feeling that sex-work was her only means to survive.  Notwithstanding, a jury determined that Wanless committed serious crimes that gravely impacted other human beings.  While no person is defined by their worst acts, and a guilty verdict is not synonymous with being a bad person, the fact of the conviction remains.  Having fully considered the parties' multiple submissions, and over Wanless's strong objections, the Court finds no basis to vacate her conviction.  The evidence Wanless presents simply fails to weigh so heavily against the verdict that a miscarriage of justice may have occurred.  *McClellon*, 578 F.3d at 857 (8th Cir. 2009).  While Wanless may disagree with or dislikes the verdict, the Court finds that she received effective counsel and a fair trial.

## CONCLUSION

For the reasons set forth above, and without need for an evidentiary or *Brady* violation hearing, the Court finds that the interests of justice do not require a new trial

based on any allegation of ineffective assistance, newly discovered evidence,

prosecutorial misconduct, or any other reason.  Accordingly, the Court respectfully

denies Wanless's Motion to Vacate.

### ORDER

Based upon the foregoing, and the files, records, and proceedings herein, **IT IS**

**HEREBY ORDERED** that Defendant Waralee Wanless's Motion to Vacate Conviction

and for a New Trial Motion (Doc. No. [1723]) is **DENIED**.


Dated:  July 1, 2020                                 s/Donovan W. Frank
                                                                DONOVAN W. FRANK
                                                                United States District Judge